IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES T. SULLIVAN, etc., et al.,<br><br>        Plaintiffs/Judgment Creditors,<br><br>  v.<br><br>UNITED PLUMBING, INC. an Illinois corporation, and<br>UNITED PLUMBING SERVICES, LLC, an Illinois<br>limited liability company,<br><br>        Defendants/Judgment Debtors. | No. 10 C 8262<br><br>Judge Amy J. St. Eve<br><br>Magistrate Judge<br>Maria Valdez |

**MOTION FOR ENTRY OF JUDGMENT
AGAINST ANTHONY SASSO**

NOW COME Plaintiffs, JAMES T. SULLIVAN, etc., et al., by their attorneys, DOUGLAS A. LINDSAY, JOHN W. LOSEMAN, and BRIAN T. BEDINGHAUS, with ROETZEL & ANDRESS, of counsel, and, pursuant to Fed. R. Civ. P. 69 and 735 ILCS 5/2-1402, move the Court to enter Supplemental Judgment against ANTHONY SASSO ("Sasso") in the amount of $29,467.37. In support hereof, Plaintiffs state:

*I.     Introduction*

Sasso is liable for the amount of distributions he received from Defendants, UNITED PLUMBING, INC. ("UPI") and UNITED PLUMBINGS SERVICES, LLC ("UPS"), after Defendants were voluntarily dissolved. Judgment should be entered against Sasso in the amount of the distributions, and Sasso should be ordered to turn the converted funds over to Plaintiffs' attorneys to be applied to the Judgment entered against Defendants on July 11, 2011.

*II.    Background*

Plaintiffs filed their Complaint on December 29, 2010, seeking an accounting of UPI's books and records to verify UPI's compliance with its obligations to Plaintiffs under a collective bargaining agreement with Chicago Journeymen Plumbers' Local Union 130, U.A. On January

1

7, 2011, UPI filed its Articles of Dissolution with the Illinois Secretary of State. *See UPI Articles of Dissolution, Exhibit A.*

UPI did not file an Appearance of record or answer the Complaint. Instead, its owners and corporate officers,[1] Sasso and John J. Connell III, personally appeared before the Court on February 14, 2011, and advised that they would cooperate with Plaintiffs' auditors. Plaintiffs' auditors completed their audit and produced a Compliance Report to the Trustees ("Audit Report") on May 17, 2011. The Audit Report revealed the existence of UPS, which was owned and managed solely by Sasso. *See Cit. Tr., p. 106, Exhibit C.* On June 6, 2011, Plaintiffs filed their First Amended Complaint, incorporating the Audit Report and adding UPS as a Defendant. *See Docket No. 18.* Sasso signed Articles of Dissolution for UPS that same day, June 6, 2011, and the Articles were filed with the Illinois Secretary of State on June 13, 2011. See UPS Articles of Dissolution, Exhibit D.

On July 11, 2011, Default Judgment was entered against UPI and UPS, jointly and severally, in the amount of $78,187.97. *See Docket No. 29.*

Defendants were served with Citations to Discover Assets on or about August 4, 2011. The Citations required Defendants to produce records and appear for Citation examination on September 14, 2011. Sasso, Connell and Defendants' accountant, Geoffrey Quinn, all appeared, were sworn, and participated in the examination.

### III. Law

Federal Rule of Civil Procedure 69(a)(1) provides that proceedings supplemental to and in aid of judgment must accord with the procedure of the state where the court is located. Section 2-1402 of the Illinois Code of Civil Procedure permits judgment creditors to use supplementary proceedings to locate non-exempt assets of the judgment debtors that are in the

---

[1] Sasso and Connell were each 50% shareholders and officers of UPI. *See Citation Exam Transcript ("Cit. Tr.") p. 15-16, Exhibit D; see also UPI's 2010 Federal Income Tax Return,*

2

hands of third parties and to compel third parties to deliver up those assets toward payment of the judgment. See 735 ILCS 5/1402(a). Section 2-1402 is not just a discovery tool; it authorizes courts to determine the rights of third parties who are holding assets of a judgment debtor. *Elmhurst Auto Parts, Inc. v. Fencl-Tufo Chevrolet, Inc.*, 235 Ill. App. 3d 88, 92-93 (1992).

IV. *Sasso is liable to Plaintiffs in the amount of $28,467.37 for distributions improperly received from UPI after the date of its dissolution*

Section 5/12.30 of The Illinois Business Corporation Act provides in relevant part:

> § 12.30. Effect of dissolution. (a) Dissolution of a corporation terminates its corporate existence and a dissolved corporation shall not thereafter carry on any business except that necessary to wind up and liquidate its business and affairs, including:
>
> (1) Collecting its assets;
>
> (2) Disposing of its assets that will not be distributed in kind to its shareholders;
>
> (3) Giving notice in accordance with Section 12.75 and discharging or making provision for discharging its liabilities;
>
> (4) Distributing its remaining assets among its shareholders according to their interests; and
>
> (5) Doing such other acts as are necessary to wind up and liquidate its business and affairs.

805 ILCS 5/12.30. Under Illinois law, shareholders of a dissolved corporation "are entitled to the residue of corporate funds only after providing for the rights of corporate creditors and the legal claims of third persons." *Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 589 (1996). During the wind-up period after dissolution, "a shareholder cannot serve himself first by manipulating corporate affairs to the detriment of creditors." *Id*. A shareholder who converts corporate assets for his own use becomes an equitable trustee of the converted property

---

*Schedules K-1, Exhibit B.*

3

for the benefit of the dissolved corporation's creditors. *Id*. at 589-590.

Shareholders who receive distributions from a dissolved corporation are liable for the dissolved corporation's debts to the extent of the distributions received. *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1195 (7th Cir. 1996). Judgment creditors may use supplementary proceedings to determine how much shareholders received from a dissolved corporation and to recover the amount received by the shareholders. *Id.*; see also *Central States, etc. v. Freyco Trucking, Inc.*, No. 02 C 3380, 2004 WL 350913 (N.D.Ill. Feb. 19, 2004).

Sasso received the following improper distributions from UPI's checking account at Standard Bank & Trust Co. after UPI's dissolution on January 7, 2011:

| Check Date | Check No. | Amount | Payee |
|---|---|---|---|
| 1/25/11 | 5674 | $705.00 | Anthony Sasso |
| 2/11/11 | 5680 | $2,500.00 | Anthony Sasso |
| 3/2/11 | 5684 | $3,500 | Anthony Sasso |
| 5/3/11 | 5696 | $11,000 | Anthony Sasso |
| 5/21/11 | 5699 | $8,300 | Anthony Sasso |

True and correct copies of each of these processed checks are attached hereto as Exhibit E.

Written on the face of Check No. 5674 is "REIMBURSEMENT FOR HEALTH INSURANCE." *See Exhibit E*. At the Citation exam, Sasso was asked if he had health insurance though United Plumbing, Inc. *See Cit. Tr., p. 18-19, Exhibit C*. Sasso replied, "No, I had health insurance through the union, my Local 501. So I don't know if that is – it was through the local. It is union insurance." *See Id*. Sasso then testified that he had to get his own health insurance in November, 2010, and that he pays the health insurance from his own personal account at Harris Bank. When asked if he was reimbursed by the company for his health insurance premiums, Sasso testified, "No, actually this is – I believe this is the only check I ever

4

received for that, for health insurance. I believe. I don't even remember this one." *See Cit. Tr., p. 78-79, Exhibit C.*

Even if Check No. 5674 *was* intended to help Sasso pay his personal health insurance, resolving to reimburse himself for health insurance to the detriment of corporate creditors is not a proper use of corporate assets during the winding down period. *Mid-American Elevator*, 287 Ill. App. 3d at 589.

When shown check No. 5680, Sasso was asked if he could recall the purpose of the payment. He replied "I really don't remember." *See Cit. Tr., p. 80, Exhibit C.* The check stub for Check No. 5680 states "Shareholder Distributions." *See Exhibit E.*

When shown Check No. 5684, Sasso was asked if he could recall the purpose of the payment. He replied, "No." *See Cit. Tr., p. 86, Exhibit C.* The check stub for Check No. 5684 states "Shareholder Distributions." *See Exhibit E.*

When shown Check No. 5696, Sasso was asked if he could recall the purpose of the payment. He replied, "I don't," and added that his guess would be "compensation." *See Cit. Tr., p. 87, Exhibit C.* The check stub for Check No. 5696 states "Shareholder Distributions." *See Exhibit E.*

When shown Check No. 5699, Sasso was asked if he could recall the purpose of the payment. He replied, "I don't." *See Cit. Tr., p. 87, Exhibit C.* Defendants did not provide a copy of the check stub for Check No. 5699, and the face of the check does not indicate its purpose.

Sasso was then shown a Standard Bank "Close Checking Account" ticket dated August 1, 2011. A true and correct copy of the ticket is attached hereto as Exhibit F. Sasso verified his signature on the ticket and testified that he and Connell went to Standard Bank on August 1, 2011, withdrew the remaining $4,924.75 in cash, and split the money between the two of them. *See Cit. Tr., p. 87-88, Exhibit C.*

V.  *Sasso is liable to Plaintiffs in the amount of $1,000 for distributions improperly received from UPS after the date of its dissolution*

UPS' Articles of Dissolution was filed with the Illinois Secretary of State on June 13, 2011. On July 20, 2011, Sasso received Check No. 1023, in the amount of $1,000, from UPS' Fifth Third Bank checking account. A true and correct copy of Check No. 1023 with the accompanying check stub, is attached hereto as Exhibit G. Like Standard Bank Check No. 5674, the check stub for Check No. 1023 states "REIMBURSEMENT FOR HEALTH INSURANCE." *See Exhibit G.* The check was issued to Sasso less than two months before the exam, but when asked at the exam if the check was reimbursement for health insurance, Sasso responded, "I'm not sure." *See Cit. Tr., p. 89, Exhibit C.* When asked if he recalled if UPS' operating agreement, by-laws or other LLC documents said anything about reimbursment for health insurance premiums, Sasso testified "I do not believe so," and deferred to his accountant, Geoffrey Quinn. Quinn answered, "No." *See Cit. Tr., p. 79-80, Exhibit C.*

Regardless of its purpose, the payment was improper. The Illinois Limited Liability Act provides that "a limited liability company continues after dissolution only for the purpose of winding up its business." *See 805 ILCS 180/35-3.* Section 35-10 of the Act provides:

> (a) In winding up a limited liability company's business, the assets of the company must be applied to discharge its obligations to creditors, including members who are creditors. Any surplus must be applied to pay in money the net amount distributable to members accordance with their right to distributions . . .

*See 805 ILCS 180/35-10.* While Section 35-10 permits an LLC to pay obligations to members who are creditors, the obligations to outside creditors must be paid first. See *In re LaHood*, 07 B 81727, 2009 WL 803558 at *7 fn 12 (Bktcy C.D.Ill. March 19, 2009). A member who commits an act that is not appropriate for winding up the dissolved LLC's business is liable to the LLC for damages it causes. *See 805 ILCS 180/35-7.*

6

Sasso's distribution of $1,000 of UPS' assets to himself instead of applying them to discharge UPS' obligations to Plaintiffs is an improper act under 805 ILCS 180/35-10; *In re LaHood*, 2009 WL 803558 at *7 fn 12. Sasso's failure to apply the funds toward UPS' obligation to Plaintiffs caused UPS to sustain a loss of $1,000. Pursuant to *805 ILCS 180/35-7*, Sasso is liable to UPS in the amount of $1,000, and the funds should be turned over to Plaintiffs' attorneys to be applied to the Judgment against UPS.

## VI.  *Conclusion*

Sasso received post-dissolution distributions from UPI and UPS totaling $29,467.37, as follows:

- $26,005.00 from UPI Standard Bank Check Nos. 5674, 5680, 5684, 5696, and 5699, plus
- $2,462.37 from the final cash withdrawal to close the UPI Standard Bank checking account, plus
- $1,000.00 from UPS Fifth Third Bank Check No. 1023.

Sasso is liable to the creditors of UPI and UPS in the amount of these distributions. See *Matos*, 101 F.3d at 1195; *Freyco Trucking*, 2004 WL 350913 at *1-2; *In re LaHood*, 2009 WL 803558 at *7 fn 12. As a shareholder who converted corporate assets for his own use after dissolution, Sasso is an equitable trustee and holds the converted funds for the benefit of Plaintiffs as the dissolved corporation's creditors. *Mid-American Elevator*, 287 Ill. App. 3d at 589; *Mallinga v. Harvey Family Med. Center*, 293 Ill. App. 3d 1001, 1006 (1997).

As of October 24, 2011, the total balance due by Defendants to Plaintiffs is $72,620.46, which includes principal of $72,663.24 and interest of $7.22. Interest accrues at the rate of 0.19% per annum on the remaining principal amount of the judgment and at the current per diem rate of $0.38.

Plaintiffs request that Judgment be entered in favor of Defendants and against Anthony

Sasso in the amount of $29,467.37, for the use and benefit of Plaintiffs, and that Anthony Sasso be ordered to turnover $29,467.37 to the attorneys for Plaintiffs, which funds shall be applied to balance of Plaintiffs' Judgment against Defendants entered on July 11, 2011. A draft Supplemental Judgment Order is attached to the copy of this motion that was served on Defendants and Anthony Sasso as Exhibit H and was submitted to the Court electronically pursuant to the Court's procedures for proposed orders on October 24, 2011.

WHEREFORE, Plaintiffs/Judgment Creditors, JAMES T. SULLIVAN, etc., et al., request that the Court enter an Order:

(1) entering Supplemental Judgment in the amount of $29,467.37 against ANTHONY SASSO, and in favor of Defendants/Judgment Debtors, UNITED PLUMBING SERVICES LLC and UNITED PLUMBING, INC., for the use and benefit of Plaintiffs/Judgment Creditors, JAMES T. SULLIVAN, etc., et al., and directing ANTHONY SASSO to turn over to the attorneys of Plaintiffs/Judgment Creditors, ROETZEL & ANDRESS, the amount of $29,467.37 within 14 days, which funds are to be applied against the judgment entered in this cause on July 11, 2011; and

(2) awarding additional relief as the Court may deem appropriate.

JAMES T. SULLIVAN, etc., et al., by their attorneys, DOUGLAS A. LINDSAY, JOHN W. LOSEMAN, and BRIAN T. BEDINGHAUS

/s/ Brian T. Bedinghaus
Brian T. Bedinghaus
20 N. Clark Street
Suite 3200
Chicago, IL 60602
(312) 580-1269

OF COUNSEL:
ROETZEL & ANDRESS
20 N. Clark Street
Suite 3200
Chicago, IL 60602
(312) 580-1200

8

## PROOF OF SERVICE

I served copies of the foregoing MOTION FOR ENTRY OF JUDGMENT AGAINST ANTHONY SASSO upon:

United Plumbing, Inc.
c/o Anthony Sasso, president
18839 South Wolf Road #30
Mokena, IL 60448

United Plumbing Services, LLC.
c/o Anthony Sasso, member
13952 Stonehenge Dr.
Orland Park, IL 60462

Anthony Sasso
13952 Stonehenge Dr.
Orland Park, IL 60462

by placing true and correct copies thereof in sealed envelopes addressed as aforesaid, with postage prepaid, and depositing same in the United States Mail Box at 20 North Clark Street, Suite 3200, Chicago, Illinois on October 24, 2011, before 4:30 p.m.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 24, 2011

_____
CHRISTINE USYAK

ROETZEL & ANDRESS
20 North Clark Street
Suite 3200
Chicago, IL 60602
312.580.1200